UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
————————————————————X

In re:                                             Chapter 7

Aida L. Ortiz,                                     Case No. 11-50246 (NHL)
a/k/a Aida L. Soto, a/k/a Aida L. Rodriguez,
                    Debtor.
————————————————————X
Robert J. Musso, Trustee of the Estate of Aida L.   Adv. Proc. No. 12-01181 (NHL)
Ortiz, aka Aida L. Soto, aka Aida L. Rodriguez
                    Plaintiff,


Deutsche Bank National Trust Co., as Trustee for
Argent Securities, Inc. Asset-Backed Pass Through
Certificates, Series 2004-W7, Under the Pooling and
Servicing Agreement Dated May 1, 2004,
                    Defendant.
————————————————————X

## DECISION DENYING REFORMATION OF SETTLEMENT AGREEMENT

APPEARANCES:

| | |
|---|---|
| Dennis J. O'Sullivan | Solomon & Siris PC |
| 210-13-35th Ave. | 100 Quentin Roosevelt Blvd. |
| Bayside, NY 11361 | Suite 504 |
| *Attorney for the Debtor* | Garden City, NY 11530 |
| | *Attorney for the Chapter 7 Trustee &* |
| | *Deutsche Bank* |

Bruce Weiner
Rosenberg Musso & Weiner LLP
26 Court St., Suite 2211
Brooklyn, NY 11242
*Attorney for the Chapter 7 Trustee*

HONORABLE NANCY HERSHEY LORD
United States Bankruptcy Judge

The matter before this Court is a motion (the "Motion") filed by Deutsche Bank National

Trust Co., as Trustee for Argent Securities, Inc. Asset-Backed Pass Through Certificates, Series

2004-W7 ("Deutsche") and Robert Musso, the Chapter 7 Trustee (individually the "Trustee" and

collectively the "Movants"), seeking relief under Federal Rule of Civil Procedure 60(b) ("Rule

60(b)"), made applicable by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 9024.

On May 30, 2012, the Trustee commenced the instant adversary proceeding against Deutsche, to

avoid a mortgage held by Deutsche and preserve the value of the lien for the benefit of the estate.

The adversary proceeding resulted in a stipulated settlement agreement (the "Settlement"), which

the Court approved by Order dated November 21, 2012 (the "Approved Settlement").

Subsequently, the Movants filed this Motion, requesting that the Court reform the

Approved Settlement to correct an alleged error.  Aida L. Ortiz (the "Debtor") objected to the

Motion, arguing that the reformation would infringe upon her homestead exemption, claimed

under 11 U.S.C. § 522(b)(3)(A).  For the reasons set forth below, the Court denies the Motion.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the

Eastern District of New York standing order of reference dated August 28, 1986, as amended by

order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

This decision constitutes the Court's findings of fact and conclusions of law to the extent

required by Bankruptcy Rule 7052.

## BACKGROUND

On December 7, 2011 (the "Filing Date"), the Debtor filed a voluntary Chapter 7 petition.

On December 16, 2011, the Debtor filed Schedule C of the petition, claiming a $150,000

homestead exemption in her residence, 88-20 107th Avenue, Ozone Park, New York (the

"Homestead").[1]  On August 9, 2012, the Trustee's time to object to the Debtor's claimed exemptions expired. Fed. R. Bank. P. 4003.

Prior to the Filing Date, on February 5, 2004, the Debtor executed a mortgage (the "88-20 Mortgage") to Argent Mortgage Company, LLC ("Argent") against the Homestead, securing a $216,300 note. Proof of Claim, Exhibit A.  On the same day, the Debtor granted a separate mortgage to Argent against 91-01 107th Avenue, Ozone Park, New York (the "91-01 Mortgage"), securing a separate $213,000 note.  However, Argent's abstract company switched the mortgages, recording the 88-20 Mortgage against 91-01 107th Avenue, Ozone Park, New York, and the 91-01 Mortgage against the Homestead.  Argent assigned both of its mortgages, the 88-20 Mortgage to Deutsche, and the 91-01 Mortgage to Ameriquest Mortgage Company.  In August 2007, Countrywide Home Loans, Inc., as assignee of Ameriquest Mortgage Company, signed and recorded a Satisfaction of Mortgage, releasing the 91-01 Mortgage. Reply to Debtor's Opposition, 3 ECF No. 10.

In June 2005, in exchange for a $70,000 note, the Debtor granted National City Bank ("National") a mortgage (the "National Mortgage") against the Homestead, which National duly recorded.  On the Filing Date, the National Mortgage was the only lien recorded against the Homestead. Notice of Motion Ex. A, ECF No. 6-1.

After learning that the 88-20 Mortgage was improperly recorded, the Trustee initiated the adversary proceeding by filing a complaint on May 30, 2012, seeking to avoid Deutsche's lien, in accordance with his strong-arm powers pursuant to 11 U.S.C. § 544(a).  On June 29, 2012, Deutsche answered, asserting affirmative defenses and counterclaims.  Subsequently, the Movants agreed that the Trustee would avoid the 88-20 Mortgage, and Deutsche's proof of claim

---

[1]    The Debtor selected the New York state law exemptions under § 522(b)(3)(A).  Thus, she was allowed to claim a $150,000 homestead exemption. N.Y. C.P.L.R 5206(a) (MCKINNEY 2011).

would be reclassified as unsecured.  Shortly thereafter, the Trustee filed a motion to approve the Settlement pursuant to Bankruptcy Rule 9019 (the "9019 Motion"). Motion, ECF No. 6.

The Settlement contemplated that the Homestead would be sold and the proceeds distributed as follows: first the closing costs ($4,184), the auctioneer's fees ($18,668), the National Mortgage ($65,841), and the 88-20 Mortgage (approximately $191,000) would be deducted from the proceeds, and second, the Debtor would receive the balance of the proceeds on account of her homestead exemption.[2] Motion 8, ECF No. 14.  Finally, the $191,000 from the avoided 88-20 Mortgage would pay the Trustee's commission (approximately $18,000) and legal expenses (approximately $30,000), and the balance (approximately $143,000) would be distributed pro rata to the unsecured creditors, including Deutsche.

On October 5, 2012, the Debtor filed opposition to the 9019 Motion, arguing the Settlement interfered with her homestead exemption.  Specifically, the Debtor contended that she was entitled to receive her entire $150,000 homestead exemption from the value of the avoided 88-20 Mortgage.

On October 23, 2012, the Trustee replied, citing to 11 U.S.C. § 522(g), which provides that "the debtor may exempt . . . property that the trustee recovers under . . . § 551 . . . if such transfer was not a voluntary transfer of such property by the debtor." 11 U.S.C. § 522(g)(1)(A). By reverse implication, § 522(g) precludes a debtor from exempting avoided property from the bankruptcy estate if the debtor voluntarily transferred the property.

Furthermore, the Trustee relied upon *In re Nersinger*. 361 B.R. 32 (Bankr. W.D.N.Y. 2007).  *Nersinger* presented facts similar to the case at bar: a mortgagee failed to duly record its interest, a debtor filed a bankruptcy petition, the trustee utilized 11 U.S.C. §§ 541(a) and 544(a)

---

[2]    Under the Settlement, the Debtor would receive $70,306 on account of her homestead exemption, since the sale proceeds are insufficient to pay the entire $150,000 homestead exemption.

to avoid liens for the benefit of the estate, and the debtor sought to claim her homestead exemption against the avoided liens. *Id.* The Court in *Nersinger* held that the debtor could not exempt a consensual lien voided by the strong-arm power of § 544(a) because §§ 522(g), 541(a)(3), 541(a)(4), and 551 preserve consensual liens for the benefit of the bankruptcy estate to protect unsecured creditors:

> [U]pon avoidance and preservation the estate became the replacement holder of the liens; . . . the avoidance and preservation of the liens did not at that time free up additional equity in the . . . [p]roperty beyond that which existed when the [d]ebtor filed her petition; . . . the preserved liens became new post-petition property of the estate pursuant to Section 541(a)(4) and remained intact for the benefit of the creditors of the estate; . . . it was only after the avoidance and preservation of the liens that the [d]ebtor became eligible to claim any exemption in the . . . [p]roperty or the proceeds of sale.

*Nersinger*, 361 B.R. at 35. The homestead exemption protects a debtor's equity in her residence, but only to the extent the value of the home exceeds any consensual liens, including liens avoided by a trustee.[3] Because of its consensual nature, a mortgage lien is presumed "voluntary" under § 522(g).[4] *See In re Swank*; AP #02-3029; Bk #01-32048; Bankr. (N.D. Ohio May 13, 2003).

On November 8, 2012, this Court held a hearing on the 9019 Motion, entertaining oral arguments from the Debtor and the Movants. At the conclusion of the hearing, this Court approved the Settlement over the Debtor's objection, ruling that the Debtor could not claim her

---

[3]     In *Nersinger*, the home sold for $128,000, with net proceeds of $126,300. Trustee's Objection at 1–2, *In re Nersinger*, 361 B.R. 32 (Bankr. W.D.N.Y. 2007) (No. 06-20806) ECF No. 34. The trustee paid the closing costs ($6,786) and held the unrecorded first mortgage ($20,616) and the unsecured second mortgage ($93,895) for the benefit of the estate ($114,511), leaving $5,002 subject to the homestead exemption. *Id.* The $114,511, which the trustee's strong-arm powers brought into the estate, paid the court's fee ($250) and the trustee ($17,962). The unsecured creditors, including the bank whose mortgages were avoided, received their pro rata share of the remaining $97,558. *Id.*

[4]     A clear showing that a mortgage was executed against the mortgagor's free will may overcome the presumption of consent. *In re Trentman*, 278 B.R. 133, 136 (Bankr. N.D. Ohio 2002). No such contention has been raised in the case at bar.

homestead exemption against the consensual 88-20 Mortgage, the properly recorded National Mortgage, or the necessary closing costs (including the auctioneer's fee).[5]  However, she was entitled to exempt assets from the estate under her homestead exemption to the extent that the proceeds exceeded the consensual liens and closing costs. *In re Nersinger*, 361 B.R. 32, 35 (Bankr. W.D.N.Y. 2007); *In Re Swank*; AP #02-3029; Bk #01-32048; Bankr. (N.D. Ohio May 13, 2003).

On November 29, 2013, on a separate motion pursuant to 11 U.S.C. § 363(b) and (f), this Court authorized the Trustee to sell the Property for $350,000 and distribute the proceeds in accordance with the Approved Settlement.

On February 28, 2013, the Movants filed the instant Motion, arguing that the Approved Settlement fails to comply with their intent and the law.  The Movants disclaim a single provision of the Approved Settlement, which states:

> The Trustee will sell the Property free and clear of liens, with liens to attach to the proceeds of the sale. After payment of the costs of sale, including any transfer taxes and title charges, the balance of the proceeds shall be deposited with the Trustee who will pay the proceeds in accordance with the Bankruptcy Code as follows:
>
> (A) First, the Trustee's auctioneer for its fees and expenses in the amount approved by the Court;
>
> (B) Second, after (A) is paid, the avoided lien of Deutsche Bank in the amount then owed by the Debtor to Deutsche Bank shall be retained by the Trustee on behalf of the Debtor's estate for the benefit of and payment of the administrative expenses of the estate, including the Trustee and his professionals and then to the unsecured creditors of the Debtor's estate, pro rata according to the amount of their approved claims.

---

[5]    This Court also considered how the Trustee and the Debtor would fare if the 88-20 Mortgage was properly recorded.  The Trustee would deduct the closing costs; the auctioneer's commission and expenses; and the liens (the National Mortgage and the 88-20 Mortgage), less the Trustee's compensation and expenses under § 506. *See In re Pink Cadillac Associates*, 1997 WL 164282 (S.D.N.Y. Apr. 8, 1997).  Under this hypothetical scenario, the Debtor would receive approximately $70,307 under the homestead exemption, and unsecured creditors would receive nothing.

Motion to Settle, 5 ECF No. 6-1.  The Movants request that this Court replace the provision with:

> The Trustee will sell the Property free and clear of liens, with liens to attach to the proceeds of the sale. After payment of the costs of sale, including any transfer taxes and title charges, the balance of the proceeds shall be deposited with the Trustee who will pay the proceeds in accordance with the Bankruptcy Code as follows:
>
> (A) First, the Trustee's auctioneer for its fees and expenses **and the administrative expenses of the estate, including the Trustee and his professionals** in the amount approved by the Court;
>
> (B) Second, after (A) is paid, the avoided lien of Deutsche Bank in the amount then owned by the Debtor to Deutsche Bank shall be retained by the Trustee on behalf of the Debtor's estate for the benefit of and then to the unsecured creditors of the Debtor's estate, pro rata according to the amount of their approved claims.

Motion ¶ 12, 8 ECF No. 14 (emphasis added).  The provision in the Approved Settlement clearly places the estate's administrative expenses upon the unsecured creditors, while the reformation sought by the Movants would deduct the expenses before accounting for the Debtor's homestead exemption, leaving her $22,306, rather than $70,306. *Id.*  The Movants argue that the law, as illustrated by *Nersinger*, requires this result.

On April 11, 2013, the Debtor filed opposition to the Motion, arguing the reformation would impermissibly deduct the Trustee's commission and expenses from her homestead exemption. Opposition to the Motion, ECF No 19.  The Court held hearings on June 13, 2013; June 26, 2013; and July 9, 2013.  On July 31, 2013, the Movants filed a Joint Brief in Further Support of the Motion, again citing *Nersinger*, Brief in Further Support, ECF No. 23, and after the Debtor's time to respond expired, the Movants filed a Reply Brief requesting this Court consider the Motion fully submitted. Reply Brief, ECF No 27.

## LEGAL STANDARD

Rule 60(b), made applicable through Bankruptcy Rule 9024, empowers this Court to provide relief from a final judgment, order, or proceeding.  "Properly applied Rule 60(b) strikes a

balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986); *see also Paddington Partners v. Econocom*, 34 F.3d 1132, 1144 (2d Cir.1994). The Movants face a very high bar, as "relief under Rule 60(b) is considered an extraordinary remedy." *Pettle v. Bickham (In re Pettle)*, 410 F.3d 189, 191 (5th Cir. 2005).

Relief from an order under Rule 60(b)(1) requires a clear showing of a grievous wrong resulting from unforeseen conditions. *See generally United States v. Swift & Co.*, 286 U.S. 106, 119 (1932). Neither ignorance nor carelessness provide grounds for Rule 60(b)(1) relief. *Hoffman v. Celebrezze*, 405 F.2d 833, 836 (8th Cir. 1969) (holding erroneous inclusion of interest in a stipulated judgment was not the type of error that 60(b)(1) was intended to fix); *In re Royster Co.*, 132 B.R. 684, 689 (Bankr. S.D.N.Y. 1991).

The Movants also seek relief under the catchall provision of Rule 60(b)(6). Although Rule 60(b)(6)'s coverage is open to interpretation, its undeniable purpose is to achieve justice in situations not covered by the preceding five clauses. *Nemaizer*, 793 F.2d at 63; *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994); *In re AMC Realty Corp.*, 270 B.R. 132, 143 (Bankr. S.D.N.Y. 2001). Rule 60(b)(6) requires "extraordinary circumstances" and "an extreme and undue hardship." *Nemaizer*, 793 F.2d at 63.

In addition to being a court order, the Approved Settlement is an enforceable contract. *In re Royster Co.*, 132 B.R. 684, 689 (Bankr. S.D.N.Y. 1991). Thus, the requested relief is also subject to state contract reformation requirements. *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000); *In re Bradless Stores, Inc.*, 313 B.R. 565, 570 (S.D.N.Y. 2004). In New York, reformation to correct a mistake requires that the mistake either flow from both parties, *Stolitzky v. Linscheid*, 150 A.D. 253, 255 (N.Y. App. Div. 1912), or from one party, if the other commits fraud or other inequitable conduct, *Stewart v. Dunn*, 77 A.D. 631, 632 (N.Y. App. Div. 1902).

As a scrivener acts for both parties, a scrivener's error is inherently a mutual mistake. *Hart v. Blabey*, 287 N.Y. 257, 262 (N.Y. 1942); *Delap v. Leonard*, 189 A.D. 87, 89 (N.Y. App. Div. 1919); *Hadley v. Clabeau*, 140 N.Y.S.2d 221, 225 (Sup. Ct. 1988).  As is the case with Rule 60(b)(1), under New York law, a party requesting reformation based on mutual mistake must establish that ordinary care could not have prevented the mistake. *See Da Silva v. Musso*, 53 N.Y.2d 543, 550–52 (N.Y. 1981); *G & G Invs., Inc. v. Revlon Consumer Prods. Corp.*, 283 A.D.2d 253, 253 (N.Y. App. Div. 2001) (precluding claim for rescission due to mutual mistake on grounds that party could have avoided mistake if it had exercised ordinary care); *Williamson Cent. Sch. Dist. v. E & L Piping, Inc.*, 261 A.D.2d 937, 938 (N.Y. App. Div. 1999) (noting negligence precluded a claim of mutual mistake).

## **DISCUSSION**

Rule 60(b) and state law allow reformation in the interest of justice, which the Movants fail to sufficiently demonstrate.  Moreover, this Court may not infringe, surcharge, or penalize the Debtor's homestead exemption once allowed, under *Law v. Siegel*. — U.S. — 134, S.Ct. 1188, 1196 (2014).

The Movants rely on Rule 60(b)(1) to request relief based on mistake, inadvertence, surprise, or excusable neglect.  However, the Movants fail to establish that they are entitled to relief under 60(b)(1), as the alleged error is not the type that the rule was designed to resolve nor does it cause the grievous wrong required.  The Movants also rely on Rule 60(b)(6) to request relief in the interest of justice for a reason not provided by Rule 60(b)(1) through (5).  However, absent a grievous injury, there is no injustice for Rule 60(b)(6) to rectify.  Additionally, even if the Movants made a mutual mistake in drafting the Settlement Agreement, their ordinary care would have prevented the alleged error, precluding relief under both 60(b)(1) and New York law.

*See Da Silva,* 53 N.Y.2d at 550–52; *G & G Invs., Inc.*, 283 A.D.2d at 253; *Williamson Cent. Sch. Dist.*, 261 A.D.2d at 938.

Moreover, if this Court were to grant relief from the Approved Settlement under Rule 60(b), it would still need to review a proposed reformed settlement under Bankruptcy Rule 9019. The Movants implicitly argue that such analysis would produce a different outcome. The Court does not agree because the proposed change would produce an incorrect and unjust result.

This Court considered three scenarios before approving the 9019 Motion: the Settlement, the Settlement under *Nersinger*, and a hypothetical situation in which Deutsche properly recorded its lien. On this Motion, this Court compares the three scenarios against the disbursements the Movants request:

|  | Settlement | Requested Reformation | Under *Nersinger* | Hypothetically Recorded |
|---|---|---|---|---|
| Sale | $350,000 | $350,000 | $350,000 | $350,000 |
| Closing Costs | ($4,184) | ($4,184) | ($4,184) | ($4,184) |
| Auctioneer's Fee | ($14,500) | ($14,500) | ($14,500) | ($14,500) |
| Auctioneer's Expenses | ($4,168) | ($4,168) | ($4,168) | ($4,168) |
| Estate's Interest | ($191,000) | ($191,000) | ($191,000) | |
| Hypothetical Mortgage | | | | ($191,000) |
| National City Mortgage | ($65,841) | ($65,841) | ($65,841) | ($65,841) |
| Trustee's Legal Expenses | | ($30,000) | | |
| Trustee's Commission | | ($18,000) | | |
| To Debtor | $70,307 | $22,306 | $70,307 | $70,307 |
| | | | | |
| Retained for the Estate | $191,000 | $191,000 | $191,000 | $0 |
| Trustee's Legal Expenses | ($30,000) | | ($30,000) | |
| Trustee's Commission | ($18,000) | | ($18,000) | |
| To Unsecured Creditors | $143,000 | $191,000 | $143,000 | $0 |

As shown above, the application of the *Nersinger* formula, which the Movants urge, results in the same outcome as the Approved Settlement. Under the Approved Settlement, and as required by § 522, the value of the 88-20 Mortgage is property of the estate, avoided for the

benefit of creditors and beyond the reach of the Debtor's homestead exemption. The Approved Settlement does not charge the Debtor for the administrative expenses the Trustee incurred in avoiding the 88-20 Mortgage. As the Court's comparison indicates, the Debtor faces the same result under the Approved Settlement and the hypothetical recordation of the 88-20 Mortgage. To grant Movants the relief requested would reward Deutsche and penalize the Debtor for the creditor's mistake—a particularly unjust result, as the mortgage avoidance does not benefit the Debtor. Accordingly, the Approved Settlement was proper and reached the correct outcome.

Finally, the United State Supreme Court's recent decision in *Law v. Siegel*, emphasizes the impropriety of charging a bankruptcy estate's administrative expenses to a homestead exemption once the time to object to a debtor's exemptions expires. — U.S. — 134, S.Ct. 1188, 1196 (2014). In *Law v. Siegel*, a debtor recorded a fraudulent mortgage to hide assets from creditors, the Chapter 7 trustee incurred over $500,000 in legal fees unraveling the fraud, and the bankruptcy court surcharged the debtor's entire homestead exemption to cover the legal fees. *Id* at 1193. The Supreme Court overturned the ruling, holding that the bankruptcy court exceeded its authority in ordering that the debtor's homestead exemption defray the legal fees incurred by the trustee. Justice Scalia explained that "§ 522 does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate. Rather, the statute exhaustively specifies the criteria that will render property exempt." *Id.* at 1196.

Here, the Trustee's opportunity to object to the Debtor's homestead exemption expired in August, 2012. The Court cannot reform the Approved Settlement to surcharge the Trustee's expenses against the Debtor's allowed homestead exemption.

## **CONCLUSION**

For the reasons explained above, the proposed reformation is improper; thus, the Motion is denied.  A separate Order will issue.



**Dated: May 8, 2014**
     **Brooklyn, New York**

_____
**Nancy Hershey Lord**
**United States Bankruptcy Judge**